**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| RONNY MONTEMAYOR, | § | |
| | § | Civil Action No.: 4:23-cv-3966 |
| Plaintiff, | § | |
| | § | **JURY DEMAND** |
| v. | § | |
| | § | |
| GENERAC POWER SYSTEMS, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff **RONNY MONTEMAYOR** ("Plaintiff" or "Ronny"), by and through his undersigned counsel, **JOHNSON BECKER, PLLC** and **CLARK & MCCREA** file this Complaint alleging strict products liability, negligence, breach of warranties, and punitive damages in the above-captioned Defendant **GENERAC POWER SYSTEMS, INC.** ("Defendant Generac") and in support thereof, Plaintiff avers as follows:

**NATURE OF THE CASE**

1. Defendant Generac manufactures, designs, warrants, markets, distributes and sells portable generators, including the "Generac Portable Generator" model number GP6500 (hereafter referred to as the "subject generator(s)") at issue in this case.

2. On or about November 19, 2021, Ronny went to take the subject generator out of the back of his vehicle. As Ronny pulled the generator out of the vehicle, the left handle got caught on the tailgate. As he tried to shift the generator to get the handle uncaught, it fell, and the generator slipped off the back. Instinctually, Ronny grabbed the bars and tried to break the generator's fall with his body/leg.

3. As he pulled his left hand back, he heard a gruesome pop at the same time as he felt it. When he pulled his left hand out, Ronny's glove remained stuck between the handle and the generator.

4. As a result, Ronny suffered a partial amputation to his left middle finger. Ronny is left-hand dominant, and once menial tasks such as gripping tools and buttoning his shirt now require extra effort; and will for the rest of his life.

5. On or about July 29, 2021, Generac recalled[1] more than 320,000 Generac Portable Generators, which includes the subject generator, because "[a]n unlocked handle can pinch consumers' fingers against the generator frame when the generator is moved, posing finger amputation and crushing hazards."[2] The recall was issued in cooperation with the Consumer Products Safety Commission (CPSC).

6. On November 10, 2022, the CPSC re-announced its recall, and updated the "incident/injuries" section of the recall notice to state "[t]he firm has received a total of 37 reports of injuries, 24 resulting in finger mutations and five in finger crushing".[3]

7. The CPSC carried out an investigation and ultimately charged Generac with not reporting this potential hazard to the federal agency in a timely manner, despite having received reports of crushings and partial amputations from consumers dating ***as far back as October 2018 and continuing into 2020.***

---

[1] *See* https://www.cpsc.gov/Recalls/2021/Generac-Recalls-Portable-Generators-Due-to-Finger-Amputation-and-Crushing-Hazards (last accessed June 19, 2023). A copy of the Safety Recall Report is attached hereto as Exhibit A.
[2] *Id.*
[3]*See* https://www.cpsc.gov/Recalls/2023/CPSC-Reannounces-Recall-of-Generac-Portable-Generators-Additional-Finger-Amputation-and-Crushing-Injury-Reported-New-Repair-Kit-Available A copy of the Re-Announced Recall is attached hereto as Exhibit B.

8. According to the Commission's findings, by the time Generac had filed an initial report with the Commission, the firm had received ***no fewer than five*** reports of consumers losing parts of their fingers while attempting to move their generators.[4] In an April 2023 Settlement Agreement with Defendant Generac, the Commission alledged:

> Despite having information reasonably supporting the conclusion that the Subject Products ***contained a defect or created an unreasonable risk of serious injury or death,*** Generac did not notify the Commission immediately of such defect or risk, as required by sections 15(b)(3) and (4) of the CPSA, 15 U.S.C. § 2064(b)(3), (4), in violation of section 19(a)(4) of the CPSA, 15 U.S.C. § 2068(a)(4).[5]

9. Generac agreed to pay a $15.8 million civil penalty in settlement of these charges.[6]

10. Defendant Generac manufactured these generators, including the subject generators, with a defect that made them inherently dangerous.

11. Plaintiff brings this case as a direct and proximate result of the strict products liability, negligence, breach of warranties of Defendant Generac. Plaintiff also seeks an award of punitive damages, as Generac's conduct demonstrates a malice or reckless disregard of the health safety of consumers.

## <u>THE PARTIES</u>

12. Plaintiff Ronny Montemayor is a resident and citizen of the city of Deer Park, County of Harris, State of Texas and is 34 years old.

13. Defendant Generac holds itself out as a "leading energy technology company that provides backup and prime power systems for home and industrial applications, solar + battery

---

[4] See https://www.cpsc.gov/Newsroom/News-Releases/2023/Generac-Agrees-to-Pay-15-8-Million-Civil-Penalty-for-Failure-to-Immediately-Report-Portable-Generators-Posing-Finger-Amputation-and-Crushing-Hazards ( last accessed June 19, 2023). A copy of the CPSC's Settlement order is attached hereto as Exhibit C.
[5] *Id.*
[6] *Id.*

storage solutions, smart home energy management devices and energy services, advanced power grid software platforms and engine- and battery-powered tools and equipment."[7]

14. Defendant Generac Power Systems, Inc. is a Wisconsin domestic business corporation with its principal place of business located at S45W29290 State Road 59, Waukesha WI, 53189.

15. Defendant Generac engages in continuous and substantial business throughout the United States, including in Texas.

**JURISDICTION AND VENUE**

16. Defendant Generac advertises and sells goods in the State of Texas and has advertised and sold the type of Generac Portable stands at issue in in this matter in the State of Texas.

17. Defendant Generac transacted and conducted business within the State of Texas that relates to the allegations in this Complaint.

18. Defendant Generac derived substantial revenue from goods and products sold and used in the State of Texas, including Generac Portable Generators.

19. Defendant Generac expected or should have expected its acts to have consequences within the State of Texas and derived substantial revenue from interstate commerce related to Generac Portable generators.

20. Defendant Generac regularly and persistently engaged in the business of marketing, distributing, and/or selling Generac Portable generators for use by consumers, including those within the State of Texas.

---

[7] *See* Generac 2022 Annual Report, https://investors.generac.com/static-files/d48234f6-0b29-48d5-bc90-304a0a13100a (last accessed June 19, 2023).

21. Defendant Generac is authorized to do business in the State of Texas and derives substantial income from doing business in this state.

22. Defendant Generac purposefully availed itself of the privilege of conducting activities within the State of Texas, thus invoking the benefits and protections of its laws.

23. At all times relevant herein, Defendant Generac conducted substantial business in Texas and purposely availed itself of the privilege of doing business in Texas by knowingly marketing, distributing, selling and shipping products, including Generac Portable generators, into Texas for sale to consumers in this state. Further, this action arises from Defendant Generac's conduct directed toward Texas, arises from a tort committed in whole or in part within Texas, relates to Defendant Generac's regular and persistent manufacture, supply and sale of Generac Portable generators, and resulted in injuries in Texas. Therefore, personal jurisdiction is proper as to Defendant Generac.

24. Jurisdiction over Defendant Generac is also proper under the due process provisions of the Texas and United States constitutions. *See e.g. Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

25. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

26. Venue of this action properly lies in the District of Texas, pursuant to 28 U.S.C. § 1391(a), as it is the judicial district and division in which a substantial part of the events or omissions giving rise to the claim occurred, in which Defendant Generac does business relating to the allegations contained herein, and wherein Plaintiff resides.

## OPERATIVE FACTS

### A. The Generac Portable Generator Recall & $15.8 Million Civil Penalty

27. Defendant Generac manufactures, designs, warrants, markets, distributes and sells home backup generators, including the "Generac Portable Generator" model number GP80000E (hereafter referred to as the "subject generator(s)") at issue in this case.

28. On or about July 29, 2021, Generac recalled[8] more than 320,000 Generac Portable Generators, which includes the subject generator, because "[a]n unlocked handle can pinch consumers' fingers against the generator frame when the generator is moved, posing finger amputation and crushing hazards."[9] The recall was issued in cooperation with the Consumer Products Safety Commission (CPSC).

29. On November 10, 2022, the CPSC re-announced its recall, and updated the "incident/injuries" section of the recall notice to state "[t]he firm has received a total of 37 reports of injuries, 24 resulting in finger mutations and five in finger crushing".

30. The CPSC carried out an investigation and ultimately charged Generac with not reporting this potential hazard to the federal agency in a timely manner, despite having received reports of crushings and partial amputations from consumers dating ***as far back as October 2018 and continuing into 2020.***

31. According to the Commission's findings, by the time Generac had filed an initial report with the Commission, the firm had received ***no fewer than five*** reports of consumers losing

---

[8] *See* https://www.cpsc.gov/Recalls/2021/Generac-Recalls-Portable-Generators-Due-to-Finger-Amputation-and-Crushing-Hazards (last accessed June 19, 2023). A copy of the Safety Recall Report is attached hereto as Exhibit A.
[9] *Id.*

parts of their fingers while attempting to move their generators.[10] In an April 2023 Settlement Agreement between the CPSC and Defendant Generac, the Commission alledged:

> Despite having information reasonably supporting the conclusion that the Subject Products ***contained a defect or created an unreasonable risk of serious injury or death,*** Generac did not notify the Commission immediately of such defect or risk, as required by sections 15(b)(3) and (4) of the CPSA, 15 U.S.C. § 2064(b)(3), (4), in violation of section 19(a)(4) of the CPSA, 15 U.S.C. § 2068(a)(4).[11]

32. Generac ultimately agreed to pay a $15.8 million civil penalty in settlement of these charges.[12]

## B. The Incident on November 19, 2021

33. On or about November 19, 2021, Ronny went to take the subject generator out of the back of his vehicle. As Ronny pulled the generator out of the vehicle, the left handle got caught on the tailgate. As he tried to shift the generator to get the handle uncaught, it fell, and the generator slipped off the back. Instinctually, Ronny grabbed the bars and tried to break the generator's fall with his body/leg.

34. As he pulled his left hand back, he heard a gruesome pop at the same time as he felt it. When he pulled his left hand out, Ronny's glove remained stuck between the handle and the generator.

35. As a result, Ronny suffered a partial amputation to his left middle finger. Ronny is left-hand dominant, and once menial tasks such as gripping tools and buttoning his shirt now require extra effort; and will for the rest of his life.

---

[10] See https://www.cpsc.gov/Newsroom/News-Releases/2023/Generac-Agrees-to-Pay-15-8-Million-Civil-Penalty-for-Failure-to-Immediately-Report-Portable-Generators-Posing-Finger-Amputation-and-Crushing-Hazards ( last accessed June 19, 2023). A copy of the CPSC's Settlement order is attached hereto as Exhibit B.

[11] *Id.*

[12] *Id.*

36. These generators, including the subject generator, are unsafe due to the propensity for the unlocked handle to crush a consumer's fingers against the generator frame; just as it did in this case.

37. Defendant Generac knew or should have known about the defective nature of its generators; yet failed to disclose this knowledge to the CPSC and hundreds or thousands of consumers, including Ronny, which ultimately resulted in his injuries.

## CAUSES OF ACTION

## COUNT I

## STRICT PRODUCTS LIABILITY

38. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

39. Defendant Generac is strictly liable in tort for its role in the design, testing, manufacture, packaging. labeling and sale of a defective and unreasonably dangerous product into the stream of commerce, which was a proximate cause of Plaintiff's injuries.

40. Defendant Generac had an active role in the design, testing, manufacture, packaging. labeling and sale of the Generac Portable generators, including the one at issue in this case.

41. The Generac Portable Generators were neither merchantable nor reasonably suited to the use intended when placed into commerce by Defendant Generac.

42. At all relevant times, including when the incident alleged herein occurred, the Generac Portable generators were used in an intended and/or foreseeable manner.

43. Plaintiff neither misused nor materially altered the Generac Portable Generator, and at the time of the incident complained of herein, the Generac Portable Generator was in the same or substantially similar condition as at the time of sale.

44. As designed, tested, manufactured, packaged, labeled and sold, the Generac Portable Generators at issue failed to perform in a manner reasonably expected in light of their intended design, nature and function; indeed it performed in a manner fundamentally inconsistent with the expectations of a reasonable consumer.

45. These generators, including the subject generator, are unsafe due to the propensity for the unlocked handle to crush a consumer's fingers against the generator frame; just as the subject generator did in this case.

46. Defendant Generac knew or should have known about the defective nature of its generators; yet failed to disclose this knowledge to the CPSC and the hundreds or thousands of consumers, including Ronny, which ultimately resulted in his injuries.

47. As designed, tested, manufactured, packaged. labeled and sold by Defendant Generac, the Generac Portable Generators were in a defective condition and unreasonably dangerous to users and consumers, such as Ronny.

48. The defective, unreasonably dangerous Generac Portable Generator, as designed, tested, manufactured, packaged, labeled and sold, is defective and is the direct and proximate cause of the complete amputation of Ronny's left index fingertip directly above his last knuckle.

49. By reason of the foregoing, Plaintiff demands judgment against Defendant Generac for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable,

and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT II

## NEGLIGENCE

50. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

51. At all times material hereto, Defendant Generac owed Plaintiff a duty of reasonable care in the design, testing, manufacture, packaging, labeling, sale and/or placement into the stream of commerce of the Generac Portable Generators.

52. Defendant Generac designed, tested, manufactured, packaged, labeled, sold and/or placed into the stream of commerce the subject Generac Portable Generator, which were purchased by Plaintiff, in a defective condition unreasonably dangerous to foreseeable users.

53. The Generac Portable Generator was not merchantable, nor reasonably suited for their intended, anticipated and/or foreseeable uses, when they were designed, tested, manufactured, packaged, labeled and sold and/or otherwise placed into the stream of commerce by Defendant Generac.

54. The Generac Portable Generators were defective and unreasonably dangerous at the time they left the possession and control of Defendant Generac and they were expected to, and did, reach Plaintiff in substantially the same condition as they were in at the time they were designed, tested, manufactured, packaged. labeled and sold, and/or otherwise placed into the stream of commerce by Defendant Generac.

55. At all relevant times, including when the Incident alleged herein occurred, the Generac Portable Generators were used in a reasonable, intended, anticipated and/or foreseeable manner.

56. Plaintiff neither misused, nor materially altered the Generac Portable Generators, at any time.

57. At all times material hereto, Plaintiff exercised due care and was properly handling the Generac Portable generators in a reasonable, intended, anticipated and/or foreseeable manner.

58. At all times material hereto, the actions and omissions of Defendant Generac were negligent, grossly negligent, willful, wanton, reckless and/or careless, and Defendant Generac breached duties owed to Plaintiff by, *inter alia*:

a. Designing, testing, manufacturing, packaging, labeling and selling the Generac Generators, including the subject generator, in a defective, unreasonably dangerous condition due to the propensity for the unlocked handle to crush a consumer's fingers against the generator frame;

b. Designing, testing, manufacturing, packaging, labeling and selling the generators, including the subject generators, in a condition wherein they did not conform to their intended design or specifications;

c. Designing, testing, manufacturing, packaging, labeling and selling the generators, including the subject generators, in a condition wherein they were not suitable for their intended purpose; and

d. In such other particulars as the evidence may show

59. Defendant Generac knew or should have known about the defective nature of its generators; yet failed to disclose this knowledge to the CPSC and hundreds or thousands of consumers, including Ronny, which ultimately resulted in his injuries.

60. By reason of the foregoing, Plaintiff demands judgment against Defendant Generac for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT III

## BREACH OF IMPLIED WARRANTIES

61. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

62. Defendant Generac designed, tested, manufactured, packaged, labeled, sold and/or placed into the stream of commerce the subject Generac Portable Generator, which was purchased by Ronny.

63. Defendant Generac impliedly represented that the Generac Portable generators, including the subject generator, was safe and free of unreasonably dangerous defects.

64. The Generac Portable generators were defective and unreasonably dangerous at the time they left the possession and control of Defendant Generac and they were expected to, and did, reach Plaintiff in substantially the same condition as they were in at the time they were designed, tested, manufactured, packaged. labeled and sold, and/or otherwise placed into the stream of commerce by Defendant Generac.

65. Defendant Generac did not disclose that the Generac Portable generators, including the subject generators, are unsafe due to the propensity for the unlocked handle to crush a consumer's fingers against the generator frame.

66. Plaintiff relied on Defendant Generac's reputation in selecting and purchasing the subject generator.

67. Plaintiff's injuries were a result of the breach of implied warranties by Defendant Generac in that the Generac Portable Generators designed, tested, manufactured, packaged. labeled and sold, and/or otherwise placed into the stream of commerce by Defendant Generac failed to properly function.

68. The failure of the subject generator to be fit for the ordinary purpose of functioning properly is a breach of warranty of merchantability, which was the direct and proximate cause of Ronny's injuries.

69. The failure of the subject generator to be fit for the ordinary purpose of functioning properly is a breach of warranty of fitness for a particular purpose, which was the direct and proximate cause of Ronny's injuries.

70. By reason of the foregoing, Plaintiff demands judgment against Defendant Generac for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

**COUNT IV**

**PUNITIVE DAMAGES**

71. Plaintiff incorporates by reference each of the allegations set forth in this Complaint as though fully set forth herein.

72. The acts, conduct, and omissions of Defendant Generac, as alleged throughout this Complaint, were willful and malicious. It is unconscionable and outrageous that Defendant would risk the health, safety, and well-being of consumers, including the Plaintiff in this case. Despite its knowledge that the Generac Portable generators, including the subject generator, were unsafe due to the propensity for the unlocked handle to crush a consumer's fingers against the generator frame, Defendant made conscious decisions not to redesign, despite the existence of an economically feasible, safer alternative design, and not to adequately label, warn or inform the unsuspecting consuming public about the dangers associated with the use of its generators. Defendant's outrageous conduct rises to the level that Plaintiff should be awarded punitive damages to deter Defendant Generac from this type of outrageous conduct in the future, as well as to discourage other Defendants from placing profit above the safety of consumers in the United States of America.

73. Prior to and during the manufacturing, sale, and distribution of its generators, Defendant knew that said generators were in a defective condition as previously described herein and knew that those who purchased and used their generators, including Plaintiff, could experience severe physical, mental, and emotional injuries.

74. Further, Defendant knew that its generators presented a substantial and unreasonable risk of harm to the public, including Plaintiff, and as such, Defendant unreasonably subjected consumers of said generators to risk of serious and permanent injury from their use.

75. Defendant Generac had a duty to timely disclose reports of injuries, including reports of crush injuries and amputations similar or identical to those experienced by the Plaintiff in this case, to the CPSC and consumers.

76. However, Defendant Generac falsely and intentionally failed to report the hazards of it's Generac Portable Generator to the CPSC and consumers in a timely manner, despite having received reports of crush injuries and partial amputations from consumers dating as far back as October 2018 and continuing into 2020.

77. These omissions by Defendant Generac to the CPSC and hundreds or thousands of consumers, including Ronny, were and are material in that it prevented the CPSC for timely recalling the subject generators, and ultimately resulted in Ronny's injuries.

78. Despite its knowledge, Defendant, for the purpose of enhancing its profit, knowingly and deliberately failed to remedy the known defects in their generators, and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in them. Defendant intentionally proceeded with the manufacturing, sale, distribution and marketing of their generators knowing these actions would expose consumers, such as the Plaintiff, to serious danger in order to advance their pecuniary interest and monetary profit.

79. Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendants with willful and conscious disregard for the safety of the Plaintiff, his family, and consumers like him, entitling the Plaintiff to punitive damages.

80. By reason of the foregoing, Plaintiff demands judgment against Defendant Generac for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable,

and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## INJURIES & DAMAGES

81. As a direct and proximate result of Defendant Generac's collective negligence and wrongful conduct as described herein, Plaintiff has suffered and will continue to suffer physical and emotional injuries and damages including past, present, and future physical and emotional pain and suffering as a result of the incident. Plaintiff is entitled to recover damages from Defendant Generac for these injuries in an amount which shall be proven at trial.

82. As a direct and proximate result of Defendant Generac's negligence and wrongful conduct, as set forth herein, Plaintiff has incurred and will continue to incur the loss of full enjoyment of life and disfigurement as a result of the incident. Plaintiff is entitled to recover damages for loss of the full enjoyment of life and disfigurement from Defendant Generac in an amount to be proven at trial.

83. As a direct and proximate cause of Defendant Generac's negligence and wrongful conduct, as set forth herein, Plaintiff has incurred medical treatment expenses and will continue to incur expenses for medical care and treatment, as well as other expenses, as a result of the severe burns she suffered from the incident. Plaintiff is entitled to recover damages from Defendant Generac for her past, present and future medical and other expenses in an amount which shall be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendant Generac as follows:

A. That Plaintiff has a trial by jury on all of the claims and issues;

B. That judgment be entered in favor of the Plaintiff and against Defendant Generac on all of the aforementioned claims and issues;

C. That Plaintiff recover all damages against Defendant Generac, general damages and special damages, including economic and non-economic, to compensate the Plaintiff for his injuries and suffering sustained because of the use of Defendant Generac's defective generators;

D. That punitive damages be awarded, according to proof;

E. That all costs be taxed against Defendant Generac;

F. That prejudgment interest be awarded to Plaintiff according to proof; and

G. That this Court award Plaintiff any other relief that it may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all relief prayed for in this Complaint and in the foregoing Prayer for Relief.

Respectfully submitted,

**CLARK │VON PLONSKI │ANDERSON**

Dated: October 24, 2023

By: */s/ Collen A. Clark*

COLLEN A. CLARK
State Bar No. 04309100
JACOB von PLONSKI
State Bar No. 24098554
R. CONNOR BARBE
State Bar No. 241085
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
214-780-0500/214-780-0501 Fax
eservice@cvpalaw.com

*In association with:*

**JOHNSON BECKER, PLLC**

Michael K. Johnson, Esq. (MN #0258696)
*Pro Hac Vice to be filed*
Kenneth W. Pearson, Esq. (MN #016088X)

*Pro Hac Vice to be filed*
Adam J. Kress, Esq. (MN #0397289)
*Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800 / (612) 436-1801 (fax)
mjohnson@johnsonbecker.com
kpearson@johnsonbecker.com
akress@johnsonbecker.com

***Attorneys for Plaintiff***